UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JAMES F. HOLDEN,<br>PLAINTIFF<br><br>VS.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>DEFENDANT | CASE NO. 1:08-CV-00429<br>(BECKWITH, J.)<br>(HOGAN, M.J.) |

## REPORT AND RECOMMENDATION

Plaintiff filed his application for disability insurance benefits (DIB) in July, 2004. He alleged an onset date of January 17, 2002. Plaintiff's application was denied, both initially and upon reconsideration. Plaintiff then requested and obtained two hearings before an Administrative Law Judge (ALJ) at Cincinnati, Ohio on June 15, 2006 and November 9, 2006. At both hearings, Plaintiff, who was represented by counsel, testified. Vocational Expert (VE), Janet Rogers testified at both hearings and medical expert (ME) Arthur Lorber testified at the second hearing. Following an unfavorable decision in November, 2006, Plaintiff processed an appeal to the Appeals Council, which refused review in April, 2008. Plaintiff then filed his Complaint with this Court in June, 2008, seeking judicial review of the Social Security Administration's final decision denying him benefits.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ made three errors prejudicial to his case. He first argues that the ALJ erred in his evaluation of medical source opinion and failed to explain what specific weight was given to the opinions. Plaintiff's second argument is that the ALJ erred in evaluating his credibility and subjective reports of pain. Finally, Plaintiff contends that the ALJ's hypothetical question to the VE does not provide substantial evidence to support the ALJ's

decision.

## MEDICAL RECORDS AND OPINIONS

Plaintiff suffered from a T11-12 compression fracture in1991, following a motor vehicle accident. (Tr. 312, 386).

In January 2002, Plaintiff suffered an injury while working as a plumber. He was carrying a heavy toilet down a flight of stairs, when he experienced pain that radiated to his left leg. (Tr. 43, 386). After an MRI showed a large disk fragment at L5-S1, Plaintiff underwent a left side laminectomy on March 18, 2002. (Tr. 295-300, 314).

Plaintiff was consultively examined by orthopaedic surgeon, Eric S. Korsh, M.D. on July 24, 2002. Plaintiff complained of low back pain. Following examination, Dr. Korsh diagnosed Plaintiff with status post left L5-S1 laminectomy with decompression, degenerative disc disease at L5-S1, musculoligamentous sprain/strain of the lumbosacral spine and consequential sexual dysfunction. Dr. Korsh continued Plaintiff's conservative care by prescribing medications, a muscle stimulator with inferential unit and physical therapy. (Tr. 316-20).

On October 18, 2002, Dr. Korsh, opined that Plaintiff had reached maximum medical improvement and further opined that Plaintiff could not perform heavy work. According to Dr. Korsh, Plaintiff had lost approximately 50% of his pre-injury capacity for such work activities as stooping, lifting, pushing, pulling, and climbing, and 25% of his ability to sit. (Tr. 325-31).

Plaintiff was seen at the Veterans' Administration Medical Centers (VA) in Cleveland and Cincinnati for ongoing low back pain, obesity and hypertension. (Tr. 168-288). Blood work revealed new onset diabetes. He was put on oral diabetic medications in May 2004. (Tr. 276, 281). A May 2004 DEXA scan revealed osteopenia. (Tr. 263).

On May 25, 2004, Plaintiff saw Raul Florez, M.D., an orthopedic surgeon, for an evaluation of his continued low back pain and left lower extremity problems. Dr. Florez reported a normal range of motion in Plaintiff's cervical spine as well as in his upper extremities, but noted weakness of the left foot, positive straight leg raising, and absent ankle jerks. (Tr. 369). Dr. Florez reported that Plaintiff still has some persistence of residuals with numbness about the

extremities with additional problems secondary to diabetes. Dr. Florez noted that Plaintiff's pain about the lower spine and midback is increased with prolonged activities or doing any heavy lifting or excessive bending. Dr. Florez opined that Plaintiff is disabled secondary to the injuries sustained while working in January 2002 as a plumber. Dr. Florez recommended an intensive course of back rehabilitation (exercises, back hardening program), with 2-3 epidural steroid injections to be given prior to back rehabilitation for 2-3 months. Dr. Florez also recommended a job search with limitations, including no lifting over 25-30 pounds and lesser degree of bending. (Tr. 368-71).

A July 2004 MRI revealed a compression fracture at T12 with 20% loss of the vertebral height and small central disc herniation at L5-S1 in the low back. (Tr. 244).

Myung J. Cho, M.D., a state agency physician, reviewed the record in August 2004, and opined that Plaintiff could perform light work with occasional crouching, kneeling, stooping, and climbing of ramps and stairs. He should not climb ladders, ropes or scaffolds. (Tr. 162-67). Willa L. Caldwell, M.D. affirmed Dr. Cho's opinion in November 2004. (Tr. 166).

On September 24, 2004, Plaintiff was seen for a neurosurgery consultation at the VA. The treatment note indicated that after Plaintiff underwent surgery in 2002, his pain totally resolved. However, the pain had returned over the past couple of weeks. Physical examination showed that Plaintiff walked with a normal, steady and even gait. He stood well on his heels and on his toes. He had good range of motion, but he experienced increased pain on flexion and extension. He had decreased sensation to light touch and no Achilles reflexes The physicians at the VA recommended referral to physical therapy, and they discussed the possibility of epidural steroid or facet block injections. They also referred Plaintiff for an examination by a rheumatologist. (Tr. 168-69).

In November 2005, Plaintiff was involved in a motor vehicle accident in San Diego. Upon his return to Ohio, he was seen in the emergency room at The University Hospital. He complained of left hand numbness, right foot numbness and blurry vision. An MRI of his cervical spine revealed left C2-C3 disc herniation. An MR angiogram did not document any evidence of a vascular injury. Cervical x-rays and a CT scan of the head were normal. (Tr. 291-93; 336-44).

3

Plaintiff saw Mario Zuccarello, M.D. at the Mayfield Clinic for continued neck pain, tingling and numbness into the left arm and hand. Examination was normal. Medication and physical therapy were prescribed. (Tr. 351-55). A December 2005 MRI of the lumbar spine revealed a mild compression deformity at T12 and residuals of the prior laminectomy. (Tr. 348-49).

On June 9, 2006, Phillip Pham, D.O., opined that Plaintiff suffered from a compression fracture and status post laminectomy, osteopenia and diabetic neuropathy. Dr. Pham opined that Plaintiff could stand and walk for 30 minutes at one time and for 1 ½ hours total in an 8 hour workday. Dr. Pham limited sitting to 2 hours in an 8 hour workday. Dr. Pham reported that medication may affect Plaintiff's activities. (Tr. 450-52).

Plaintiff underwent a consultative examination in July 2006, by Richard Sheridan, M.D., an orthopedic surgeon. Examination revealed Plaintiff weighed 250 pounds and is 5'10" tall. Dr. Sheridan found no reflexes at the left ankle, restricted motion of the low back, positive straight raising, and hypesthesia over the S-1 dermatome in the left foot and calf. He had diminished circumference of the left upper arm and forearm. Plaintiff complained of pain with straight leg raising on the left, but not on the right. There was slightly diminished lumbar flexion. There was no spasm in any area. Dr. Sheridan did not find evidence of recurrent disc herniation or radiculopathy. Dr. Sheridan opined Plaintiff had a residual functional capacity for sedentary work, with lifting and carrying less than 10 pounds frequently and occasionally. No limitations were placed upon Plaintiff's ability to sit. Standing and/or walking were limited to less than 2 hours in a workday. Dr. Sheridan concluded that Plaintiff should perform no posturals and has a diminished ability to push and pull with the arms and legs. (Tr. 453-66).

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified at the June 15, 2006, hearing, that he was born November 23, 1965, making him 40 years old at the time of the hearing. He is 6'1" tall and weighs 240 lbs., is right-handed and smoked a pack of cigarettes each week. He graduated from high school and he took

a few college courses when he served in the Navy. Plaintiff injured his back while he was working as a plumber in January 2002. He was carrying a heavy toilet down some stairs. Plaintiff had a laminectomy in March 2002. Plaintiff was also involved in a motor vehicle accident that injured his thoracic spine. He did not require surgery after the accident, but he did take part in physical therapy. He was diagnosed with diabetes in 2005 and is on medications. He has constant pain in the back of his legs. He reported his pain is at 4-5/10 on medications and 8/10 with activity. He lies down twice a day for 1-2 hours. He took a variety of medications. Side effects include drowsiness, constipation, and diarrhea. Plaintiff stated he was being treated by Dr. Plunkett at the VA for pain. He also saw Dr. Sehgal for diabetes. He has been treated with a TENS unit, injections, and a stimulator. The epidural injection provided only temporary relief.

Plaintiff estimated that he can lift 5 to 10 pounds. He can stand 30 to 60 minutes, walk 10 minutes or 5 blocks, and sit 20 to 30 minutes. He can bend from the waist, but it hurts.

Plaintiff spends his day watching television and reading. He does some light housework, dishes, vacuuming and laundry. (Tr. 475-87).

A supplemental hearing was held on November 6, 2006, following an orthopedic post-hearing examination. Plaintiff testified at the supplemental hearing that he had stopped smoking based on recommendations from the physicians at the VA. He was still seeing Dr. Pham and Dr. Plunkett at the VA. He walks twice a week. Plaintiff reported his pain was constant. Plaintiff testified that he can sit or stand 30 to 45 minutes. He can sit a total of 2.5 hours in an eight hour day. (Tr. 27-37).

## THE MEDICAL EXPERT

At the second administrative hearing, the ME engaged in a lengthy description of the record. (Tr. 43-48). The ME then testified that Plaintiff's impairments do not meet or equal section 1.04 of the medical listings. Plaintiff's impairments, however, did reduce his ability to lift, stand, and walk. (Tr. 48). The ME opined that Plaintiff was limited to sedentary work, with

no lifting over ten pounds. He could perform occasional bending, stooping or kneeling. He could not crawl, and he could not be exposed to concentrated vibrations, and could not work at unprotected heights, or around dangerous, moving machinery. Plaintiff could not work on slippery, wet, or uneven surfaces, and could not perform jobs that required balancing, climbing ladders, scaffolds or ropes. The ME opined that Plaintiff could stand for a total of two hours on an intermittent basis, and he could sit for six hours on an intermittent basis. The ME recommended a sit/stand option with Plaintiff changing his position at least every thirty minutes.

Asked by the ALJ to look at the RFC assessment of Dr. Pham and to see if Dr. Pham supported his assessment with particular medical signs and laboratory findings, the ME testified that Dr. Pham had talked about diabetic neuropathy, and ME stated that this diagnosis was not corroborated by record evidence. The ME further testified that Dr. Pham had opined that pain limited Plaintiff's functional ability. The ME noted that he did not follow that reasoning either, even though ME noted that his RFC restricted Plaintiff to a greater degree than did Dr. Pham, who opined that Plaintiff could lift up to 20 pounds. The ME concluded that Dr. Pham did not support the severity of his restrictions with sufficient data.

The ME further testified that he disagreed with the opinion set out by Dr. Florez. (Tr. 54). The ME stated that although he found Dr. Korsh's statement about Plaintiff losing 50% of his pre-injury abilities an odd way of stating limitations, he agreed with his statement. Assuming that Plaintiff was performing medium-to-heavy work as a plumber, then the ME's reduction to a range of sedentary work would seem to agree with Dr. Korsh's statement. (Tr. 54-55). The ME further testified that his opinion regarding Plaintiff's ability to sit for up to six hours and no more than thirty minutes at one time, accommodated Dr. Korsh's statement about Plaintiff's loss of 25% of his sitting capacity. (Tr. 55).

The ME next testified that his limitation that Plaintiff could sit for six hours each day stems from "the pathology that is present in the record," including Plaintiff's history of a compression fracture, his need for surgery, the micro-discectomy, and the pathology in his cervical spine. (Tr. 55-56). The ME initially responded that, in his opinion, Plaintiff should not be receiving these medications. (Tr. 56). Then, he replied that it was possible that such medications could preclude him from working. *Id.*

6

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The VE testified at the first hearing that Plaintiff's past relevant work as a plumber was heavy as performed and as described in the *Dictionary of Occupational Titles* (DOT). Plaintiff's past relevant work as a plumbing foreman was heavy as performed, but medium in the DOT.

The ALJ's first hypothetical question to the VE assumed an individual who has the residual functional capacity to lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk about 6 hours; sit for 6 hours. The hypothetical individual would have no limits in upper or lower extremities, but would be limited to occasional climbing, stooping, kneeling, crouching or crawling. The hypothetical individual would also be limited to low temperature extremes. (Tr. 489). The VE responded that the hypothetical individual could perform light cleaner jobs with 2,473 job locally.

A second hypothetical would limit Plaintiff to sedentary work with a sit/stand option every half hour and further require no frequent bending, crouching, stooping, crawling and no temperature extremes. The VE responded that the hypothetical individual could perform sedentary unskilled jobs such as an assembler, laborer, or as a hand packer.

At the November 9, 2006 hearing, The ALJ posed a hypothetical question based on the limitations set out in Dr. Sheridan's assessment. (Tr. 63). The VE responded that the hypothetical individual with the limitations set out by Dr. Sheridan could perform the three sedentary jobs of assembler, laborer, or hand packer. (Tr. 65). When asked about the limitations set out by Dr. Florez, which includes lifting 25-to-30 pounds, the VE responded that in addition to the light assembly and cleaner job, the hypothetical individual could also perform jobs as a machine tender, with 703 local jobs and 87,900 national jobs. (Tr. 66).

## OPINION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ concluded that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, history of a thoracic compression fracture, osteopenia, and diabetes. The ALJ further found these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The ALJ's residual functional capacity assessment was reflected in his hypothetical question to the VE, which was that Plaintiff can perform a range of sedentary work. The ALJ next found that Plaintiff was not capable of performing his past relevant work as a plumber, as typically performed in the economy. The ALJ then used sections 201.28 and 203.29 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and concluded that there is a significant number of jobs in the national economy that Plaintiff is capable of performing. Therefore, the ALJ found that Plaintiff was not disabled and unable to receive Social Security benefits.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, Plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(I), 423. Establishment of a disability is contingent upon two findings. First, Plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second,

the impairments must render Plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley* v. *Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk* v. *Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461 U.S. 957 (1983)*.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which Plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to

screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen*, No. 876189, slip op. at 4 (6th Cir. Oct. 28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a

combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.,* § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden. *Abbott v. Sullivan,* 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.,* 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). The existence of a minor non-exertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.,* 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.* 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.,* 801 F.2d 794, 796 (6th Cir. 1986).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.,* 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson,* 735 F.2d at 964; *Kirk,* 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris,* 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v.*

*Weinberger,* 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S,* 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger,* 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.,* 39F.3d 115, 118 (6th Cir. 1994).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.'" *Duncan,* 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiffs activities, the effect of plaintiffs medications and other treatments for pain, and the recorded observations of pain by

plaintiffs physicians. *Felisky,* 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King* v. *Heckler,* 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky,* 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst* v. *Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir.1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

"In general, the opinions of treating physicians are accorded greater weight those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985); *Lashley* v. *Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler,* 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters,* 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions

and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen* v. *Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner,* 127 F.3d 525, 529 (6th Cir. 1997); *Shelman,* 821 F.2d at 321.

## OPINION

Plaintiff contends that the ALJ erred by rejecting the opinions of Dr. Pham, a treating pain specialist, and by crediting the opinions of Dr. Lorber, the medical expert and Dr. Sheridan, a one-time examining physician. Plaintiff reasons that the ALJ failed to apply the correct legal criteria during her evaluation of Dr. Pham's opinions, specifically the weight she gave to the physicians, under Rulings 96-2p and 96-8p. According to Plaintiff, the ALJ's decision fails to provide a valid reason for rejecting Dr. Pham's opinions.

The ALJ set forth the correct legal criteria under the treating physician rule, and in doing so, did not err as a matter of law. *See* Tr. 13-14.

The Commissioner correctly argues that the treating physician rule did not apply to Dr. Pham, because he was not a treating medical source. Nowhere in the record does it indicate when Plaintiff saw Dr. Pham or what treatment he received from Dr. Pham. Thus, Dr. Pham does not meet the regulatory definition of a treating source. *See* 20 C.F.R. §404.1502 (defining treating source as a physician who has had an "ongoing treatment relationship with you"). Plaintiff argues that the ALJ failed to address Dr. Pham's opinion. The ALJ did address Dr. Pham as follows:

> A June 2006 residual functional capacity assessment was provided by Phillip Pham, DO. He is reportedly an associate of treating pain specialist, James Plunkett, MD. The record does not verify that the claimant has ever seen Dr. Pham. The claimant's medications have mainly been prescribed by VAMC physician, Jasmina Jovic, MD, and, a new primary care physician, Mandy Sehgal,

MD.... (See Exhibits 8E/3, 9E). Dr. Pham gives a residual functional capacity for a limited range of sedentary work, lifting and carrying 10 pounds frequently and 10 to 20 pounds occasionally. Sitting was limited to ½ to 1 hour at a time for 2 hours a workday and standing and/or walking ½ hour at a time for 1 ½ hours a day. The claimant could perform occasional posturals with no climbing, and would have limitations on reaching and working around heights, moving machinery, temperature extremes, and vibration. (Exhibit 14F).

The claimant's attorney maintains that Dr. Pham's residual functional capacity should be given controlling weight as it is from a treating doctor....

Dr. Lorber explained that Dr. Pham and Dr. Sheridan both give sedentary assessments. Dr. Pham's assessment is more limiting. However, Dr. Lorber questioned the reasons Dr. Pham gave for such a limiting residual functional capacity assessment. Dr. Pham relied on diagnoses of myofascial pain syndrome and diabetic neuropathy but the medical expert said that these impairments are not corroborated. MRI and x-rays testing show that the claimant's pain originates in the facet joints.

(Tr. 15).

In addition, the ALJ's RFC assessment is supported by substantial evidence, including the expert medical testimony offered by Dr. Lorber, who indicated that "although clinical testing shows some abnormal findings, they are not of such severity to prevent the claimant from performing a range of sedentary work. *See* Tr. 16. The ALJ's assessment is further supported by, and consistent with, the opinion of Dr. Sheridan, an examining physician. Dr. Sheridan concluded that Plaintiff had a residual functional capacity for sedentary work, with lifting and carrying less than10 pounds frequently and occasionally. No limitations were placed upon Plaintiff's ability to sit. Standing and/or walking were limited to less than 2 hours a workday. Dr. Sheridan concluded that Plaintiff should perform no posturals and has a diminished ability to push and pull with the arms and legs. (Tr. 453-66). These opinions are consistent with the ALJ's RFC assessment.

Finally, Dr. Pham's opinion that Plaintiff is disabled is inconsistent with the findings and conclusions of examining physicians Dr. Korsh as well as with the reviewing physicians, Drs. Cho and Caldwell. (Tr. 162-67). As the Commissioner notes, "the only physician of record who even comes close to agreeing with Dr. Pham is Dr. Florez." *See* Doc. 6 at 15-16. However, Dr.

Florez's lifting limitations for Plaintiff exceed those of every other physician of record. (Tr. 371). Because Dr. Pham's opinion differed from all the other physician opinions of record, the ALJ was entitled to assign little weight to that opinion. *See* 20 C.F.R. §404.1527(d)(4) ("Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").

The second error assigned by Plaintiff's counsel is that the ALJ misevaluated Plaintiff's credibility and subjective reports of pain. The court finds this argument unavailing. In assessing Plaintiff's credibility, the ALJ noted ,

> The claimant testified that he lives independently with his wife. He does dishes, laundry, and vacuuming. He watches television, reads, and drives. In August 2004, the claimant reported that he does small tasks around the house like dishes and laundry. He cares for his personal needs without difficulty. He fixes quick, easy meals. He does small repairs, waters the outside plants, drives, and goes out daily. He shops for groceries and clothes. He handle his finances. He reads and watches television most of the day. He visits with friends and family, talks on the telephone, and goes to church (Exhibit 3E). The record shows that the claimant walks daily for exercise and swims twice a week (Exhibit 2F/61). He reported in January 2004 that swimming provides some relief (Exhibit 2F/13). In June 2005, he was walking, swimming, and occasionally doing partial sit ups and push ups (Exhibit 12F/39). He got married and went on a honeymoon in October or November 2005 (Exhibits 8F, 12F/35) at which time he flew to San Diego and drove once he got there (testimony). The claimant's inconsistent statements and allegations regarding the degree of functional impairment and the range of his activities diminish the credibility of his claim of disability.

(Tr. 14). Plaintiff's treatment notes and the medical opinions of record do not support Plaintiff's argument. The ALJ also relied on the testimony of the medical expert, Dr. Lorber in assessing Plaintiff's credibility. Dr. Lorber testified that the Plaintiff was able to function from 1991 to 2002 at a heavy job with the compression fracture and a herniated disc. He has had no ongoing neurological compression since his surgery in March 2002. He has some pain, but it is not disabling. *See* Tr. 16.

Plaintiff further alleges that the ALJ failed to find that medication side effects would significantly limit his ability to work. *See* Doc. 5 at 7-8. Dr. Lorber noted that although Plaintiff alleged significant side effects of his medications at the time of his hearing, such is not corroborated by the medical record. In addition, the claimant drives in spite of his pain

medications. The ALJ further points to Dr. Lorber's testimony that Plaintiff drove during his vacation in San Diego. The ALJ noted, "It seems that he can function with his medications and the record does not support that they are as limiting or as disabling as the claimant alleges." *See* Tr. 16.

Plaintiff argues that his complaints of disabling pain and his physical limitations are supported by the RFC opinions of Dr. Pham. (Doc. 5 at 7). While this may be true, the ALJ's decision to reject Dr. Pham's opinions is supported by substantial evidence as discussed above and, therefore, Plaintiff's reliance on Dr. Pham's opinions is misplaced. Moreover, the ALJ's determination that Plaintiff's subjective allegations regarding his symptoms and limitations are not wholly credible is fully supported by the record evidence. The ALJ's decision reflects that she properly considered the required factors in determining Plaintiff's credibility. *See* 20 C.F.R. §404.1529(c). In light of the ALJ's opportunity to observe Plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

Finally, Plaintiff contends the ALJ erred by relying on a hypothetical question to the VE that did not account for Dr. Sheridan's opinion that Plaintiff cannot stoop. (Tr. 464). Plaintiff alleges that the ALJ rejected this part of his RFC. The Commissioner correctly notes that the VE's testimony was given prior to Dr. Sheridan's examination and Dr. Lorber's November 2006, hearing testimony. Therefore there is no basis for this argument.

## CONCLUSION

Because substantial evidence supports the decision of the ALJ, we **RECOMMEND** that his decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

Date: 9/11/09

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), ( C) or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).